[Civ. No. 7394. First Appellate District, Division One.—July 8, 1931.]

EVA R. GUILD, Respondent, v. W. F. BROWN et al., Defendants; THOMAS WASHINGTON, Appellant.

Ford & Johnson and Fletcher A. Cutler for Appellant.

Crozier C. Culp and Lynn W. Culp, Sr., for Respondent.

PARKER, J., *pro tem.*—The action is to recover damages claimed as a result of personal injuries and injury to personal property incurred as the result of an automobile accident. In the court below judgment went for the plaintiff and against both the defendants. The appeal is prosecuted by the defendant Washington. The question of negligence is not an issue on this appeal nor does the question of damages enter herein. The facts of the case are undisputed in the main, and the question here presented may be more accurately stated following a general outline of the facts.

The appellant Washington is, and was at the times herein noted, an admiral in the United States navy and was at the said times assigned as commandant of the Twelfth Naval District of the United States, which said district embraced the territory wherein the happenings to be related occurred. The defendant Brown is and was at all of the said times an enlisted man in the United States navy. The defendant Brown under orders, of which hereinafter, was acting as chauffeur for the appellant, the admiral, on the day in question. The car which he was operating was the property of the United States Government. The admiral and his chauffeur left the navy headquarters at San Francisco en route to the Bohemian Grove, at which latter place was maintained a clubhouse as an adjunct of the Bohemian Club. The admiral was a member of this club and his attendance at the place was as a member and in nowise connected with the naval department or with any other department of the federal government. After delivering the admiral safely to his destination the chauffeur proceeded to return to headquarters as originally directed and ordered. It was on his return, while the admiral was not with him, that the car driven by the chauffeur collided with the car of plaintiff, as a result of which this action was brought.

The only question is whether or not there was such a relationship between appellant Washington and the enlisted man Brown on the day and at the time and place in question as would render appellant liable in damages to the plaintiff for the admitted negligence of Brown, the chauffeur. The question is one not free from difficulty for two reasons.

First, there is little precedent from the standpoint of factual similitude; secondly, the underlying principles formerly controlling have, through a process of statutory enactment both substantive and procedural, and judicial application, become sufficiently elastic to justify almost any conceivable solution. It seems elementary, however, that no liability can attach to the appellant Washington unless it can be shown that there was some privity of individual relationship between him and the defendant Brown. It may, therefore, be well to establish the individual status of each regardless of the events in question.

Brown was an enlisted man in the navy, with the rating of machinist or machinist's mate, first class. By regular routine he had been assigned to shore duty through the proper authorities. His detail on shore embraced the duties of chauffeur. It was within his duties to operate the service automobiles as directed. Whatever the orders were in this respect, his obedience thereto was enjoined wholly by reason of his status, and not through any personal contract of service with any individual whom he might serve. If he had been ordered to take the car and drive to any store or business establishment to secure articles personal to his superior officer, he would have had no discretion to question the order. Whatever he did in the operation of said car pursuant to his orders, he did in the capacity of an enlisted man.

The automobile with which we are concerned was admittedly the property of the United States and assigned for use to naval headquarters of the Twelfth District. On the day prior to the day of the journey the admiral had notified his aide of his contemplated trip and requested the detail of the car and driver. Accordingly at the appointed time Brown appeared with the government car at division headquarters, with directions to drive the admiral to Bohemian Grove. No order was given by the admiral nor was Brown directed in any way by him as to where he should drive. All of this was embraced in his routine detail. The admiral simply stepped in the car and the journey began. The trip to the grove was completed, the admiral safely delivered at his destination, and the chauffeur started on his return to headquarters. His official detail was to deliver the admiral at Bohemian Grove and return to headquarters.

Coming then to the status of the appellant. He was a member of the same navy as the defendant Brown. Each was bounden to a common authority, and basically there was no difference in the status of either. Their common vocation was with the navy. Though of different rank each served under the same general regulations and to the accomplishment of a common end. While their duties were under a common authority yet in the performance of these duties one was subordinate to the other and in the scheme of things the enlisted man was subject to the orders and directions of the superior officer. In its strictest sense, however, the relation of master and servant did not exist.

The proper governmental authority had placed at the disposal of the admiral the automobile in question and a likewise properly functioning agency had permitted its use for whatever purpose the admiral might determine. Respondent concedes that had the accident happened while the government car was on an official trip engaged in business directly pertaining to the administration of the admiral's business then no personal liability on the admiral would have resulted. But, contends respondent, the admiral had withdrawn himself from his office or his rank for the time being and was engaged wholly in his private affairs. Let us concede this for the sake of argument. Then it necessarily follows that we must fix the time of this claimed withdrawal. If for the purposes of this vacation the admiral stepped aside from his rank and official position, the transition occurred at the time he stepped into the car at the commencement of his journey. He was from that time on the guest of the naval department. He was either such guest or else he was the admiral fully functioning as such and in the discharge of his duties. There can be no middle ground. Conceding still the private nature of his journey, it follows that as an individual he had no control or authority over the chauffeur with respect to his employment or discharge or his conduct. If there had been a breach of discipline or any insubordination display by the chauffeur on the journey the power or right to punish or discharge him would have to be traced back to the regulations of the service.

The only claim of respondent to sustain the judgment of the court below is on the theory of *respondeat superior*.

Having discussed the relationship of the parties we may then apply the rule relied on thereto.

In the case of *Moss* v. *Chronicle Pub. Co.*, 201 Cal. 610 [55 A. L. R. 1258, 258 Pac. 88, 90], the court quotes approvingly from other holdings of the same tribunal. We find therein this statement: " 'In other words, the application of the doctrine of *respondeat superior* in any given case depends upon the power of control which the superior possesses, and which for the protection of third persons he is required to exercise, over the conduct and activities of his subordinates. Consequently the doctrine has application only in cases where the power of control exists, and such power does not exist in a situation where the special employer has no voice in the selection or retention of the negligent subordinate.' "

Again, quoting from 39 Corpus Juris, section 1462, page 1275: "To escape liability the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under the control of a third person; and it is necessary to distinguish between authoritative direction and control and mere suggestions as to details or the necessary cooperation where the work furnished is part of a larger operation."

In *Billig* v. *Southern Pac. Co.*, 189 Cal. 477 [209 Pac. 241, 243], speaking on the doctrine under discussion here, the court states: "In such a situation, however, it is obvious that it is necessary to ascertain who was the master at the very time of the negligent act complained of. This is so for the doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong at the very time and in respect to the very thing out of which the injury arose."

While the facts before us in the instant case do not parallel a case of hiring or lending, nevertheless in as far as the control of the servant goes, there is more than a passing analogy.

Quoting from *Billig* v. *Southern Pac. Co.*, *supra*, we find: "It would appear, therefore, to be the rule in this state that when a master hires out, under a rental agreement, the services of an employee for the operation of an instrumentality owned by the master, together with the use of the

instrumentality, without relinquishing to the hirer the power to discharge such servant, to go where and perform such work as the hirer directs, the legal presumption is that, although the hirer directs the servant where to go and what to do in the performance of the work, the servant, as the operator of the instrumentality employed in the doing of the work, remains, in the absence of an agreement to the contrary, the servant of the general employer in so far as concerns the manner and method of operating the instrumentality, and the negligence of the servant must be held to be that of the owner and not that of the hirer of such instrumentality.'' (Citing cases.)

In the instant case any control or authority that the admiral had over Brown necessarily arose out of the naval regulations bearing on the particular situation. To repeat, if it be conceded that both men were on official duty covering the trip, then it is further conceded that no theory of *respondeat superior* has application under the facts.

The complicating feature is the fact that as admiral the appellant remained the superior officer of the enlisted man; but this was entirely independent of the transaction under review. But if we accept the theory of the respondent and of the court below that appellant had completely disconnected himself from the service, we cannot accede to the contention that though in fact removed from the service, yet for the purpose of fixing a liability he was still in control of the chauffeur solely by reason of his rank in that service. We can see no difference in the facts of the case than in a case where the admiral had retired from active service and had completely withdrawn himself from the service and after retirement had been a visitor at headquarters and the officer in command had detailed an enlisted man to escort him to his home. Surely, if in such a case the enlisted man upon his return from his trip, homeward bound, had been guilty of a wrongful or negligent act in the handling of the car, there would be no contention that the retired officer was liable under any doctrine.

Summing up the facts as coming within the rules of law stated, we find Brown, an enlisted man, bound to his employer, the government, pursuant to his enlistment and the regulations governing, and assigned to chauffeur duty. He is ordered in the regular course of his employment to drive

the car to Bohemian Grove and to carry as a passenger the admiral, the appellant herein. He is neither hired nor loaned to the appellant. He is specifically in the service of his master performing no service for appellant as master, but always within the terms of his own employment and subject only to the control of his own master throughout. We can conceive of no sound principle of law that renders appellant liable for the acts of Brown upon his return trip.

Much is said by respondent of the fact when the admiral was delivered at the grove he instructed Brown to return and gave him money with which to buy his lunch. The instruction to return home was pursuant to the detail. And if the relationship under the skin between the colonel's lady and her maid still holds, there was perhaps sufficient subcutaneous relation between the admiral and the chauffeur to break down the barrier of rank to the extent at least of permitting this friendly courtesy.

In the case of *Dowler* v. *Johnson,* a New York case, found in 225 N. Y. 39 [3 A. L. R., at page 146, 121 N. E. 487], it is said: "We do not doubt the rule invoked by counsel for the defendant, and sustained by superabundant citations, that public officers are not liable for the negligence of their subordinates unless they cooperate in the act complained of, or direct or encourage it."

There remains another feature of the case that must be considered. The appellant was the commandant of the Twelfth Naval District. His duties were to some extent general within his district and it will be unnecessary to enumerate them. He is on duty twenty-four hours a day under the regulations and at any place or point within the district. Bohemian Grove was within the district. Any official business that it was necessary to transact with him by any member of the staff or of the department could have been transacted at Bohemian Grove, and while, perhaps, the cares of his station might have been momentarily forgotten in this retreat, he was still on duty. The record offers no contradiction of this direct evidence and the trial court was without right to ignore it.

He was not on leave of absence and if he chose by way of respite to depart from the surroundings nominally designated as headquarters, he in no sense assumed the status of a civilian. The various branches of the goverment, state and

federal, are necessarily knit together in close formation and it hardly seems in comport with the comity existing to attempt to draw too close lines regarding the technical status of those engaged in the public service.

It seems to be taken for granted in these times that the main thing in every case of accident is to find someone able to respond to the claim of damage. And following this out the ancient doctrines of the law have been twisted and distorted in an endeavor to dole out damages to every unfortunate person injured, regardless of the true principles upon which liability rests.

It is our opinion that the judgment should be reversed, and it is so ordered.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 7, 1931, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 31, 1931.