## RICH v. WARREN.
### No. 8665.

Circuit Court of Appeals, Sixth Circuit.

Nov. 7, 1941.

John T. Metcalf, of Lexington, Ky., and E. E. Ellison, of Washington, D. C., (Francis M. Shea, of Washington, D. C., John T. Metcalf, of Lexington, Ky., Sidney J. Kaplan, Maurice W. Hibschman, and Enoch E. Ellison, all of Washington, D. C., and Ben L. Kessinger, of Lexington, Ky. and Claude P. Stephens, of Prestonsburg, Ky., on the brief), for appellant.

C. R. Luker, of London, Ky. (J. Milton Luker, of Barbourville, Ky., and C. R. Luker, of London, Ky., on the brief), for appellee.

Before HAMILTON, MARTIN, and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

A Major in the United States Army has appealed from a judgment rendered against him in the District Court on the verdict of a jury in a civil action for personal injuries.

While being driven on a public highway by a C.C.C. government employee, officially detailed as chauffeur, a government-owned automobile, in which the Major, on official duty, was riding on the front seat beside the chauffeur, struck and injured a pedestrian in the town of Flat Lick, Knox County, Kentucky.

The District Judge, in his charge to the jury, succinctly stated the basis of the cause of action: "The claim for damages is based upon a charge that the injuries were due to the negligence of the driver of the automobile, and that Major Rich was supervisor of that driver or the commanding officer of that driver, and that he participated or co-operated, or acquiesced in the negligence of the driver which was the cause of the plaintiff's injury."

■ The leading authority in point is Dowler v. Johnson, 225 N.Y. 39, 121 N.E. 487, 488, 3 A.L.R. 146, where the rule was approved that public officers are not liable for the negligence of their subordinates unless they cooperate in the act complained of, or direct or encourage it. The New York Court of Appeals granted a new trial where the court below had dismissed a tort action against the Fire Commissioner of the City of New York, brought by a person injured in a collision with an official automobile driven by a fireman assigned to that duty by the Commissioner. The complaint had charged that, at the time of the collision, the automobile carrying the Commissioner was driven under his orders and that it was driven negligently. Holding that the Commissioner was not liable for the negligence of the fireman on the theory of respondeat superior, the court stated the issue to be whether the defendant did in fact direct or encourage, or personally cooperate in the negligent act.

Asserting that the Commissioner's mere presence in the car would be insufficient of itself and in all circumstances to charge him with liability, Judge Cardozo said: "There must have been command or co-operation. De Carvalho v. Brunner, 223 N.Y. 284, 287, 119 N.E. 563; 1 Cooley on Torts (3rd Ed.) pp. 213, 244. But ratification may be equivalent to command, and co-operation may be inferred from acquiescence where there is power to restrain. * * * One cannot let oneself be driven at breakneck speed through city streets, and charge the whole guilt upon the driver, who has done one's tacit bidding."

We approve Dowler v. Johnson, supra, as did the Eighth Circuit Court of Appeals in Fidelity & Casualty Co. v. Brightman, 53 F.2d 161, 166, where the doctrine was restated: "It is well-settled law that public officers are not responsible for acts of subordinate officials, if such subordinates are themselves employees of the government, where there is no negligence on the part of such public officials in employing them, unless the superior officer has directed or encouraged or ratified such acts or has personally co-operated therein."

Neither Phelps v. Boone, 62 App.D.C. 308, 67 F.2d 574, nor Guild v. Brown, 115 Cal.App. 374, 1 P.2d 528, cited by appellant,

have bearing here; because, in the former case, a Naval Officer was using, on purely personal business, an official automobile driven by an enlisted man; and, in the latter, an Admiral was not even in the government automobile at the time the enlisted man assigned to him as chauffeur became involved in an accident.

Evidently fully cognizant of the authorities and in consonance with their principles, the District Judge charged the jury clearly, comprehensively and correctly. The jury was instructed that if the driver of the car was negligent, if his negligence directly and proximately caused plaintiff's injury, and if the defendant, Major Francis M. Rich, by his encouragement or acquiescence cooperated to bring about the accident, he would be responsible; but if he did not cooperate or acquiesce or participate in the negligence of the driver, he would not be liable.

The charge emphasized that the mere presence of the Major in the automobile at the time of the accident did not render him responsible, but that the chauffeur's negligence would be imputed to the Major only if he "failed to properly supervise or direct or command the driver, after he had a reasonable opportunity to see that the driver was doing that which was negligent or improper in the operation of the car."

The narrow limit of circumstances within which the Major could be held liable was stressed at the conclusion of the charge:

"Major Rich cannot be held responsible, unless he did something or failed to do something which he should have done as the Commanding Officer there at that time. This man was not his employee and the law that ordinarily makes a master responsible for the negligence of his servants, does not apply in this case. The law does not hold a public officer responsible for the negligence of his subordinate, unless he takes some part in it, or is in some way responsible for it by commanding it or directing or acquiescing in it.

"Now, if this accident happened there suddenly as the result of a sudden emergency, Major Rich is not responsible for it at all. If he had observed that his driver was negligently driving on the wrong side of the road at the time when a man was negligently walking on the wrong side of the road, and he consented to it and acquiesced in it, then he is responsible, but there is nothing in this case to warrant you in finding that Major Rich did anything whatever to bring about this accident, and the only evidence that would warrant any conclusion, impute any responsibility to Major Rich, can arise only from the fact, if you believe it to be a fact, that the driver of his automobile drove it on the left hand side of the road where it would injure the plaintiff who was walking on that side of the road. That is what this case will have to turn on.

"On the other hand, if you believe that he did not drive on the left hand side of the road, but that this was the result of the negligence of the driver, arising from some sudden emergency, or from the negligence of the plaintiff, you must find for the defendant."

■ Under instructions adequately protective of the defendant's legal rights, the jury found for the plaintiff and its verdict was upheld by the District Judge. Therefore, the only question here is whether there was substantial evidence to support the verdict.

■ The comment made by Judge Hickenlooper in Smith v. Daniel, 6 Cir., 46 F.2d 740, 741, is pertinent: "An undue amount of time and space was devoted, in the briefs and at the argument, to questions of fact as to which the parties are foreclosed in this court. Where there has been, as there was here, substantial evidence in support of the verdict, we may consider only questions of law properly saved during the trial of the case."

The same rule prevails in Kentucky. "It is an unvarying rule that the verdict of a properly instructed jury supported by substantial evidence is conclusive and should not be set aside on appeal." Combs, Judge, v. Knott County Fiscal Court, 283 Ky. 456, 458, 141 S.W.2d 859, 860. See, also, Howind v. Scheben, 233 Ky. 139, 25 S.W.2d 57.

■ The substantial evidence in the instant case is more than ample to support the verdict. The appellee's version of the accident was that, while walking on the right shoulder of the highway, he first saw the automobile rounding a curve some 200 or 400 feet away and coming toward him at an estimated speed of 40 or 50 miles per hour. The car was traveling on the wrong side of the road, and when it had reached a point about 20 feet from him, appellee realized that he would be hit, despite the fact that he was a foot or two off the highway and jumped, but not in time to avoid

injury. The car, which appeared to be skidding, "slid in to me off on the shoulder on my side of the road," he testified.

William H. Gray, who was walking about 30 or 40 yards behind appellee, testified that he first saw the automobile some 30 or 40 yards from the point of collision, coming on its wrong side of the road toward appellee, who was walking on the shoulder on his right-hand side of the road. He testified further: "I saw that car was going, looked like right straight towards him, and I wasn't far behind him, and the car was coming pretty full speed. I stepped off the curbing, off the gravel, I was plumb off the gravel of the road, and the ground was wet and I kind-of got to sliding that way with my foot, and I looked down to see where I was at, and when I looked up he was knocked down." He stated that, although he did not see the automobile hit appellee, he did see appellee dragged by it over to the other side of the road. The automobile, according to the witness, "got" appellee "hung some way or another; it pulled him and he was kind of rolling and pulling under that car and the car pulling right back to the right."

Haskell Gray, nineteen-year-old son of William H. Gray, swore that he was walking down the highway with his father about 100 yards behind appellee, who was walking "out on the gravel, plumb off the highway" on his right-hand side of the road. The witness saw an automobile about two or three hundred yards away, coming toward appellee around a curve on its left side of the road. The car continued on a straight-a-way course on its left or wrong side of the road until he saw it strike appellee and drag him off the gravel, to a point where the front end of the automobile was slanting out into the middle of the highway. He testified positively that the automobile struck plaintiff and knocked him down.

Eli Broughton gave testimony that skid marks showed that the car had skidded from its left or wrong side of the road "pretty near to where it stopped on account of angling across the pike."

Ben Gray corroborated the other witnesses in their statements that appellee was on the right side and appellant on the wrong side of the road at the time of the accident.

The testimony of appellant and of Mitchell Raymond, the enlisted man who drove the car, was in conflict with the evidence which has been summarized. Raymond testified that the automobile was being driven by him on his right-hand side of the road at a speed not in excess of 35 miles per hour, that the car was limited to that speed by a governor; and that, after rounding the curve, he first observed appellee, who was walking on the opposite side of the road a hundred or more yards away.

Raymond stated: "I saw him walking along and I let up off the gas and coasted on down and got close to him, I will say twenty or twenty-five feet, and he stepped to my side of the road and fell." This was followed by the statement that he then put on the brakes, stopped the car and got out; and that he thought the automobile did not strike the appellee.

Appellant corroborated the testimony of Raymond in all material details; described him as a young man of exemplary habits and an expert and experienced chauffeur, whom he had designated to serve him officially as such. Appellant stated that he, himself, had nothing whatever to do with the operation of the automobile and had never directed Raymond concerning its operation; that Raymond was always very careful to keep on his own side of the road, and was doing so at the time of the accident. He testified that appellee cut directly across the road, took two or three steps and fell in front of the car, about 10 feet away. He admitted that he possessed authority to restrain the chauffeur from driving recklessly or on the wrong side of the highway. He said that he almost had the "life or death" of the C.C.C. boys in his hands and that he had official authority to "kick them out," but as an individual had no more authority than the interrogating attorney had. He asserted that he would have fired the driver of the car if he ran it too fast, "or took chances."

But, as previously stated, our concern is not to decide the issue of conflicting testimony, but is merely to ascertain whether there is substantial evidence in the record to support the verdict of the jury. We have reached the obvious conclusion that, from the testimony of the witnesses introduced by appellee, the jury was warranted in inferring cooperation "from acquiescence where there is power to restrain" the negligent act of another.

The judgment is affirmed.