[L. A. No. 1607.  Department One.—January 28, 1905.]

WARNER E. WILLEY and LULU K. WILLEY et al., Respondents, v. JAMES I. CLEMENTS, Appellant.

EXCHANGE OF LANDS—ACTION FOR RESCISSION—FRAUD—FALSE REPRESENTATIONS—SUPPORT OF FINDINGS—CONFLICTING EVIDENCE—INFERENCE OF FACT.—In an action to rescind an exchange of lands, and to set aside the deeds of transfer thereof for fraud of the defendant in falsely representing the character, extent, and condition of his land, whereby the exchange was induced, where the court found in favor of the plaintiff upon conflicting evidence, the findings in accordance with the testimony for the plaintiff must be accepted as correct; and any inference of fact which the court may reasonably make from the evidence is entitled to the same consideration in support of a finding as findings of fact upon conflicting evidence.

[1] 21 Am. Rep. 677.

ID.—FALSE REPRESENTATIONS OF AGENT.—Where one who had formerly been the agent of the plaintiff for the collection of rents, was defendant's agent to secure the exchange of lands, his false representations to her respecting the character and condition of the defendant's property have the same effect to bind the defendant, whether made in the presence or absence of the defendant.

ID.—PROOF OF AGENCY—SUPPORT OF FINDINGS.—The fact of agency for the defendant was to be determined by the court upon a consideration of the entire evidence respecting the course pursued by him during the negotiations, rather than from any specific testimony by him or by the defendant as to the fact, and a reasonable inference of such fact from the evidence will support a finding of the fact.

ID.—ORAL MISREPRESENTATIONS NOT SUPERSEDED BY WRITTEN PROPOSAL. —Oral misrepresentations of fact made by the defendant and his agent as inducement for the plaintiff to make the exchange of lands were not superseded by a written proposal for the exchange, signed by the defendant and subsequently accepted by the plaintiff, after a deed from her had been fraudulently obtained.

ID.—PARTIAL RATIFICATION—OTHER MISREPRESENTATIONS RELIED UPON— RESCISSION AFTER DISCOVERY. — Where the plaintiff, induced by fraud to consent to the exchange, did, for a consideration, subsequently ratify the known shortage of acreage, but was still imposed upon by other false representations as to the character and condition of the property, which were peculiarly within the knowledge of the defendant, and which would not be disclosed by a mere examination of the property, and upon which she was to rely without any investigation for the purpose of ascertaining their truth, her subsequent ascertainment of their falsity gave her a right to rescind the said ratification as well as the original transaction of exchange.

ID.—COMMISSION FRAUDULENTLY DEMANDED BY DEFENDANT'S AGENT— FALSE REPRESENTATION—PAYMENT BY DEFENDANT—REIMBURSEMENT NOT REQUIRED.—Where the defendant's agent falsely represented to the plaintiff grantor that he was acting for her benefit, and that he was entitled to a commission from her, which he stated that defendant had agreed to pay in part consideration of her ratification of the shortage, and that defendant would also reduce the mortgage on the property, which was done to induce the ratification, upon rescission of the ratification, as well as the original transaction, the plaintiff grantor was not required to refund the commission paid by the defendant to his agent.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion.

John W. Kemp, and Byron L. Oliver, for Appellant.

There was no proof of conspiracy between MacKnight and the defendant, and his declarations were not admissible against the defendant. (2 Rice on Evidence, 846 et seq.; *Barkly* v. *Copeland,* 86 Cal. 483; *People* v. *Compton,* 123 Cal. 407.) Fraud must be clearly proven, and the presumption is in favor of fair dealing. (*Levy* v. *Scott,* 115 Cal. 41, 42; *Casey* v. *Leggett,* 125 Cal. 664, 671; *Clark* v. *Reeder,* 158 U. S. 524; *Farrar* v. *Churchill,* 135 U. S. 609, 615.) Where the purchaser investigates for himself, or has the means of investigation, he cannot rely upon the vendor's representations. (*Wainscott* v. *Occidental etc. Assn.,* 98 Cal. 254; *Southern Development Co.* v. *Silva,* 125 U. S. 259; *Farrar* v. *Churchill,* 135 U. S. 615; *Farnsworth* v. *Duffner,* 142 U. S. 43, 47; *Ludington* v. *Renick,* 7 W. Va. 273.) Expressions of opinion or of value are not fraudulent representations upon which the purchaser is entitled to rely. (*Rendell* v. *Scott,* 70 Cal. 514; *Lee* v. *McClelland,* 120 Cal. 147; *Blumenthal* v. *Greenberg,* 130 Cal. 384; *Taylor* v. *Ford,* 131 Cal. 440; *Chrysler* v. *Canaday;* 90 N. Y. 272;[1] *Ellis* v. *Andrews,* 56 N. Y. 83;[2] *Rockafellow* v. *Baker,* 41 Pa. St. 319;[3] *Reynolds* v. *Palmer,* 21 Fed. 433-435; *Graffenstein* v. *Epstein,* 23 Kan. 443;[4] *Bishop* v. *Small,* 63 Me. 12; *Parker* v. *Moulton,* 114 Mass. 99.[5]) A ratification with knowledge of the alleged fraud is conclusive. (*Schmidt* v. *Mesmer,* 116 Cal. 270; *Harrington* v. *Paterson,* 124 Cal. 542; *St. John* v. *Hendrickson,* 81 Ind. 350; *Edwards* v. *Roberts,* 7 Smedes & M. 544.)

J. Wiseman Macdonald, and Clarence A. Miller, for Respondents.

The trade was inequitable on its face, for inadequacy of consideration connected with the fraud alleged. (*Beverly* v. *Blackwood,* 102 Cal. 83; *Hicks* v. *Thomas,* 90 Cal. 289.) The false representations as to the character and condition of the property of defendant entitled the plaintiff Lulu K. Willey . to the relief granted. (14 Am. & Eng. Ency. of Law, 2d ed., pp. 45, 46, 73, 74, 76, 83, 120, 130, 132; *Maxson* v. *Llewellyn,* 122 Cal. 195; *Groppenziesser* v. *Lake,* 103 Cal. 37.) The

[1] 43 Am. Rep. 166.            [4] 33 Am. Rep. 171.
[2] 15 Am. Rep. 379, and note.   [5] 19 Am. Rep. 315.
[3] 80 Am. Dec. 624.

false representations were provable by parol. (*Barfield* v. *South Side Irrigation Co.,* 111 Cal. 118; *Hicks* v. *Thomas,* 90 Cal. 289; 14 Am. & Eng. Ency. of Law, 2d ed., 200.) False representations made by the defendant's agent as to value or quality, where the parties were not dealers on equal terms, or the property is at a distance or artifice was used to prevent inquiry, are fraudulent. (14 Am. & Eng. Ency. of Law, pp. 37, 121, 122, 124, 125, 126; *Wainscott* v. *Occidental etc. Assn.,* 98 Cal. 253.) It is sufficient that the false representations contributed in any degree to induce the party defrauded to act notwithstanding a partial investigation. (14 Am. & Eng. Ency. of Law, 2d ed., pp. 112, 114, 115, 118.) The partial ratification having been obtained by fraud, could be rescinded. (Civ. Code, sec. 2314; 14 Am. & Eng. Ency. of Law., 2d ed., p. 160; *Brown* v. *Rouse,* 104 Cal. 612; *King* v. *La Grange,* 50 Cal. 328; *Pratt* v. *Philbrook,* 41 Me. 132.)

HARRISON, C.—Action for rescission and to set aside certain instruments of transfer executed between the plaintiffs and the defendant.

In January, 1902, the plaintiff Lulu K. Willey was the owner of certain real estate in Los Angeles, which she subsequently conveyed to the defendant in exchange for a tract of land in Tulare County conveyed to her by him. She seeks by this action to rescind the transaction upon the ground that she was induced to make the exchange by reason of certain false and fraudulent representations made to her by and on behalf of the defendant. The plaintiff Warner E. Willey is the husband of Lulu, and for that reason is joined with her as a party plaintiff.

At the trial of the cause the court found that among the inducements to make the exchange the defendant represented to Mrs. Willey that his tract of land in Tulare County consisted of three hundred and eighty acres, of which one hundred acres had been planted to alfalfa, and had produced crops of alfalfa each year; that there were twenty-five tons of alfalfa stacked on the place and in the barn which had been produced on the ranch; that the ranch had produced in the preceding year fifty-four hundred sacks of grain; that the profits of the ranch for that year amounted to six thousand dollars; that there was a water-ditch running across the place,

which furnished all the water necessary for the crops upon
the land, at a cost of fifty cents per acre; that there was
appurtenant to the land five hundred shares of water stock,
which he held, and which entitled the ranch to an abundant
supply of water free of charge; that the property was encum-
bered by a mortgage of two thousand dollars, bearing interest
at six per cent; that all the personal property on the place
went with it; that with said personal property there was a
valuable gang-plow.

The court found that the ranch consisted of only three hun-
dred and twenty acres; that there was an encumbrance of six
thousand dollars upon it, which also covered certain other
property; that with the exception of about twenty acres no
part of the ranch had ever been planted to alfalfa, or pro-
duced any alfalfa, and that this twenty acres had never
yielded a crop of alfalfa; that no part of the twenty-five tons
of alfalfa then stacked there had been produced upon the
place, but that all of it had been cut from an adjoining ranch;
that the ranch did not produce fifty-four hundred sacks of
grain in the year 1901, but produced only eleven hundred
sacks in that year, and that that was the largest crop that
had ever been produced in one year on the ranch; that the
profits of the ranch for the year 1901 did not amount to six
thousand dollars, or to any sum of money whatever; that
there was no water stock appurtenant to said ranch, or en-
titling the ranch to any supply of water whatever free of
charge, or at all; that no water could be obtained for the
ranch except at the cost of $1.50 per acre; that there was no
gang-plow on the ranch belonging to the defendant. The
superior court thereupon rendered judgment in favor of the
plaintiffs, from which and from an order denying a new trial
the defendant has appealed.

In support of the appeal the appellant urges that the evi-
dence before the court was insufficient to justify its decision
in favor of the plaintiffs; that before the deeds of exchange
were executed Mrs. Willey had caused an examination of the
Tulare property to be made, and relied upon such examina-
tion and her judgment thereon, instead of the representations
made to her by the defendant; that after the deeds of ex-
change had been executed and recorded she ratified the trans-
action by a subsequent instrument in writing.

Upon the issue whether the above representations were made to the plaintiff, as well as upon many other issues in the case, the testimony on behalf of the respective parties was directly contradictory, and the above findings of the court that the representations were made in accordance with the testimony given on behalf of the plaintiff, rather than in accordance with the testimony on behalf of the defendant, must be accepted as correct. That the representations were false and were known to the defendant to be false when they were made is not controverted by him. That they were made in reference to facts which were material to the transaction is evident from their nature.

Some of the above representations to the plaintiff were made by one MacKnight, who acted quite prominently in the transaction, and the finding of the court that he was the agent of the defendant for the purpose of effecting the exchange, and that, therefore, his representations to Mrs. Willey as to the character of the Tulare property are to have the same effect as if made by the defendant himself, is challenged by the appellant as not sustained by the evidence. Whether he was such agent was an issue sharply contested at the trial, and was to be determined by the court upon a consideration of the entire evidence respecting the course pursued by him during the negotiations, rather than upon any specific testimony by him or by the defendant as to the fact of agency; and the inference which the trial court might reasonably make from such evidence is entitled to the same consideration as its finding of a fact upon contradictory evidence. The evidence before the court, however, fully justified it in finding not only that MacKnight was the agent of the defendant for the purpose of effecting the exchange, but that during all the negotiations in reference thereto he falsely pretended to Mrs. Willey that he was acting in her interest, while he was in fact acting in the interest of the defendant and against her interest. Although he had for some years prior thereto been her agent in collecting rents, and had aided her in other business transactions to the extent that she reposed trust and confidence in him, she did not employ him for this transaction, but received the proposition for the exchange from him. This proposition was made, in the first instance, by the defendant to MacKnight, and was typewritten and signed by

the defendant in the office of MacKnight. MacKnight there-
upon requested Mrs. Willey to come to his office, and there
she first met the defendant, and in his presence MacKnight
then read the proposition to her. During this interview oral
representations as to the character of the Tulare property
were made by both the defendant and MacKnight, and Mac-
Knight strongly urged her to accept the proposition. The
contention of the appellant that these oral representations
cannot be considered, for the reason that they were super-
seded by the written proposition, is without merit. The rep-
resentations, whether oral or written, were made as induce-
ments for entering into the contract, and the provision of sec-
tion 1625 of the Civil Code, cited by the appellant, that the
writing supersedes the previous verbal negotiations, has no
application until after the contract in writing has been exe-
cuted. The subsequent conduct of MacKnight during the
course of the transaction fully supports the conclusion of
the court that he was at all times acting as the agent for the
defendant and in his behalf, and consequently that the de-
fendant is accountable for his representations made in his
absence, as well as for those made in his presence.

The facts relied upon as a ratification are as follows: At
the time the appellant's proposition to exchange the prop-
erties was submitted to Mrs. Willey (January 10th) she
wrote at the bottom thereof: "If the property is satisfactory
upon investigation I will trade," and signed her name thereto.
On January 16th she was taken seriously ill, and for several
weeks thereafter was confined to her bed, and by reason of
her illness was unfitted during that time to do business. While
she was in this condition, MacKnight, on January 17th,
falsely stated to her that the defendant had received an offer
of five thousand dollars more for his Tulare property, and
that he was likely to accept the same, and presented her a
document—the nature of which he concealed from her, but
which he represented to her to be an instrument which would
have the effect of holding the defendant to his bargain—and
urged her to sign it, stating to her that the document was to
be held by him in escrow. Upon these representations she
signed the document without reading it or having it read to
her, and MacKnight took it away with him. The instrument
was in fact a conveyance of her Los Angeles property to the

defendant, and although she was ignorant of this fact, and did not in fact acknowledge her execution of it, MacKnight on the same date, after leaving her, affixed to it his certificate as a notary public, that she had acknowledged its execution to him, and instead of keeping it as he had promised, he delivered it to the defendant, at whose request it was recorded in the office of the county recorder of Tulare County on January 24th. On January 27th she learned that the instrument was a conveyance of her Los Angeles property, and that the Tulare property consisted of only three hundred and twenty acres, and upon calling the attention of MacKnight to this fact he said to her that he had got the paper and finished the thing up through his zeal for her welfare, but that if she did not want the ranch he could fix it; that if she would indorse her acceptance upon the defendant's original proposition that would make it a contract, and the defendant could be made to pay her the full value of the sixty acres shortage, or she could knock the trade over if she wished. Thereupon she wrote upon the document of January 10th, "Above proposition accepted," and signed her name thereto, and Mac-Knight took the paper away. This indorsement was written by her on January 27th, but MacKnight caused it to be dated January 16th, thus making it appear that she had accepted the proposition prior to the execution of her deed. A day or two later she consulted an attorney in reference to the transaction, and on January 30th he wrote to the defendant, calling his attention to the discrepancy in acreage of the Tulare tract. On the next day the defendant, instead of responding to the letter of the attorney, sent to Mrs. Willey through the post-office a registered letter in which he stated to her that he knew no reason why she should be dissatisfied with the deal, but that he was perfectly willing to trade back, and offered to do so, stating also that his offer would remain open for ten days. At the time he sent this letter he knew that Mrs. Willey was ill, and would not for that reason be able to act upon it during the ten days therein named, and that she had not ascertained, and could not during that time ascertain, the truth as to the aforesaid representations made by him. MacKnight also advised her upon her receipt of the letter to disregard it, saying to her: "Do not pay any attention to that offer of Clements to rescind. I will fix matters

up.'' A few days after this MacKnight again visited the plaintiff and falsely represented to her that she was indebted to him in the sum of nine hundred and twenty-five dollars as a commission for his services in the transaction, and stated to her that the defendant would pay him this commission, and would allow her certain other money connected with the transaction, and would extinguish the encumbrance on the Tulare property in excess of two thousand dollars, if she would ratify the transaction of exchange and waive any claim on account of the sixty acres shortage, and on February 14th presented to her an instrument purporting to express her satisfaction with the exchange, which, at his request, she thereupon signed.

At the time she signed this document she knew that the Tulare property was sixty acres less in extent than defendant had represented it to be, and she accepted the plaintiff's agreement to reduce the encumbrance thereon to two thousand dollars. If these had been the only items of misrepresentation her execution of the instrument would have rightly estopped her from claiming any rescission. The defendant had, however, made the other representations above mentioned of the character and condition of his property, whose falsity she did not ascertain until after she went to the property in April. These were statements of facts which were peculiarly within his knowledge and which would not be disclosed by a mere examination of the property, and upon which she had the right to rely without any investigation for the purpose of ascertaining their truth. (*Bank of Woodland* v. *Hiatt*, 58 Cal. 234; *Calmon* v. *Sarraille*, 142 Cal. 638.) Her subsequent ascertainment of their falsity gave her the right, under section 2314 of the Civil Code, to rescind the ratification as well as the original transaction.

The court rightly held that defendant was not entitled to be reimbursed for the nine hundred and twenty-five dollars paid to MacKnight. The plaintiff was only required to restore what she had received from the defendant. As she was under no obligation to MacKnight, the payment to him by the defendant was not for her benefit, and she was not required to refund it to him.

We advise that the judgment and order appealed from be affirmed.

Cooper, C., and Gray, C., concurred.

For the reasons stated in the foregoing opinion the judgment and order appealed from are affirmed.

Angellotti, J., Shaw, J., Van Dyke, J.

Hearing in Bank denied.