[Civ. No. 1440. Fourth Appellate District.—February 1, 1934.]

RENA WOODMAN et al., Respondents, v. HEMET UNION HIGH SCHOOL DISTRICT OF RIVERSIDE COUNTY et al., Appellants.

Joe Crider, Jr., Elber H. Tilson and Sarau & Thompson for Appellants.

Fred L. Hamblin and Albert H. Ford for Respondents.

MARKS, J.—This action was instituted by Donald Woodman, a minor, by his guardian *ad litem*, and by Rena Woodman, his mother, to recover damages sustained by them because of injuries to Donald resulting from the alleged negligence of all of the defendants. A verdict was returned and judgment rendered in favor of the Riverside County Council of Boy Scouts of America and the Troop Committee of Hemet Troop No. 47; and in favor of plaintiffs and against appellants in the sum of $2,500 for the injuries suffered by Donald, and $1113.30 for expenses of his mother in his care and medical treatment.

For brevity we will refer to the Hemet Union High School District of Riverside County, as the District; the Riverside County Council of Boy Scouts of America, as the County Council; and the Troop Committee of Hemet Troop No. 47, Boy Scouts of America, as the Troop Committee.

The District was a duly organized union high school district of Riverside County. It conducted a junior high school in the city of Hemet in which a course in automobile repair and machine-shop work was given. W. J. Austin had been employed as a teacher of the District for about seven and one-half years prior to February 9, 1931, and was head of the shop work department. He testified that among his duties he had ''the maintenance, upkeep of transportation and general supervision of our shop work''. He had in his department a 1918 model Ford truck.

Hemet Troop No. 47 of the Boy Scouts of America was under the direct charge of the Troop Committee and under the general supervision of the County Council. W. J. Austin was its scout master and in charge of the troop activities. Bob Ogleby, James McClellan and Ernest Pabst, aged about sixteen, thirteen and thirteen years, respectively, at the time of the accident in question, were members of Hemet Troop No. 47, and students in the junior high school of the District. Ogleby was in the shop class of Austin. Donald Woodman, who was twelve years of age, was a student in the junior high school. He attended the meetings and activities of and paid dues to Troop No. 47, though not a member, as he had not passed his scout examinations.

The District owned the 1918 model Ford truck above mentioned, which in 1931 was in a most dilapidated condition. It was part of the equipment of the automobile

shop and was under the control of Austin. It had no hood. Part of the windshield was gone as were most of the floor boards in the driver's compartment. The bed had no stakes or sideboards. It had no battery and was started by the use of a crank. Its emergency brake was useless. It had other defects which were not connected with the accident in question. To assist in starting the engine Austin used a four-cell "hot shot" battery, which he had placed on the floor of the truck-bed immediately back of the driver's seat. A ground wire connected one pole of the battery to the frame of the truck. A wire about five feet long having clips on both ends connected the other pole of the battery to a post on the coil box situated on the front of the dash. After the engine was started Austin would detach the clip from the coil box post and wind the wire around the battery.

At a meeting of Troop No. 47, held several days prior to February 9, 1931, Austin asked for volunteers to go to a river-bed about eight miles from Hemet to get rock to be used in the construction of a fireplace at the "Scout Barracks". No one volunteered. On Friday, February 6, 1931, Ogleby volunteered to make the trip. Austin loaned him the Ford truck and helped start it. He knew that other boys would go, but did not know which ones would make the trip. This journey was completed without accident. On Monday, February 9th, Ogleby offered to make another trip to the river-bed. Austin again permitted him to use the truck, filled it with gasoline and assisted in starting it. He knew that other boys were going on the trip, but denied knowledge of their identity. Donald Woodman, James McClellan and Ernest Pabst, who were on the school grounds, joined Ogleby on the truck. Donald had accompanied him on the trip made on the previous Friday. Ogleby drove by the home of Donald Woodman where his mother gave him her permission to make the journey. The boys went to the river-bed, filled three sacks and one box, placed them on the truck and started the return journey. Ogleby drove, with James McClellan sitting with him, and the other boys riding on the truck-bed.

The battery had been connected when the engine was started. One end of the wire was disconnected from the coil box post. James McClellan held this end in his hand

to prevent it from coming into contact with the metal of the truck and "shorting the engine". The other end remained connected to the battery.

The engine "pumped oil", which sprayed through the broken windshield onto the boys on the front seat. To keep their shirts clean they removed them and placed them in the corner of the seat behind James McClellan. On the return journey, as they approached an "S" curve in the road, with a sloping bank of about five feet on the left, the wind blew the shirts from the seat. James McClellan turned to catch them and in so doing brought the end of the live wire in contact with the bare flesh of Ogleby's hand. The shock caused him to jump and jerk the steering-wheel so that the truck went off the road and down this bank. Donald Woodman slid off the bed of the truck and was seriously injured.

The legal principles involved in the consideration of the liability of the District and of Austin are entirely distinct except the contentions that Donald Woodman was guilty of contributory negligence, and that he was a passenger and could only recover upon proof of gross negligence or wilful misconduct. (Sec. 141¾, California Vehicle Act, as then in effect.) Appellants, without admitting that the truck was in a dangerous or defective condition, urge that if its condition made it a dangerous instrumentality, it was in the same condition when Donald Woodman rode on it on the previous Friday; that he had knowledge of such condition and that he was guilty of contributory negligence in riding on it a second time. The answer to this contention is found in the tender years of the boy. In *Barrett* v. *Harman,* 115 Cal. App. 283 [1 Pac. (2d) 458, 459], a boy of the age of eleven years was injured. The court there said: "The defense of contributory negligence may be invoked in an action by or on behalf of a child where the latter was of an age sufficient to exercise discretion for the avoidance of injury; but a child is not held to the same degree of care as an adult, and is only required to exercise that degree of care which is ordinarily exercised by minors of like age, mental capacity and discretion. There is no precise age at which as a matter of law a child is to be held accountable for his actions to the same extent as one of full age, and the question as to the capacity of a child at

a particular time to exercise care to avoid a particular danger is one of fact for the jury. (*Cahill* v. *E. B. & A. L. Stone Co.*, 167 Cal. 126 [138 Pac. 712].) And the rule has been applied where the child sought to be charged with contributory negligence was considerably older than the plaintiff in the present case. (Citing cases.) The presumption is that the child was at all times exercising due care for its own safety (Code Civ. Proc., sec. 1963, subd. 4). Until overcome, the presumption was evidence in accordance with which the jury was bound to decide (*Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82 [41 A. L. R. 1027, 239 Pac. 709]; *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529]).'' The jury by its verdict having absolved Donald Woodman from the charge of contributory negligence, the record furnishes no evidence upon which we can disturb this finding. No question of the contributory negligence on the part of Mrs. Woodman in permitting Donald to ride on the truck is raised.

Section 141¾ of the California Vehicle Act, in effect at the time of the accident, defined a guest as follows: ''For the purpose of this section the term 'guest' is hereby defined as being a person who accepts a ride in any vehicle without giving compensation therefor.'' While Donald was not a member of Troop No. 47, he had applied for membership, was paying his dues and was attending meetings and functions of the troop, presumably as a matter of right. The boys were on a trip to procure rock and sand with which to build a fireplace at the scout barracks which would be used for the mutual benefit of the Boy Scouts and Donald. This fact removes him from the status of a guest under the rule announced in *Crawford* v. *Foster*, 110 Cal. App. 81 [293 Pac. 841].

The truck was in the possession of Austin and he was responsible for keeping it in a condition to be operated with safety. He knew all of its defects and had provided the quite unusual battery installation to aid in starting the motor. He did not instruct the children in the safe way to start the Ford or warn them of any of the dangers incident to its use. He did not tell them to disconnect both ends of the wire and coil it around the battery after starting the engine. The live wire presented a danger to inexperienced children which should have been apparent to any

ordinarily prudent adult and especially to a skilled automobile mechanic. The truck in its condition was a dangerous instrumentality when placed in the hands of immature and inexperienced children.

In 20 Ruling Case Law, page 15, it is said: "All persons are bound to take certain measures to discover and inform themselves of perils that may constitute a menace to person or property. Those who own, operate and maintain instrumentalities and places owe this duty in favor of persons who come into contact therewith; and a reciprocal duty is owed by the persons menaced to be vigilant for their own protection. And in certain situations, when peril has been discovered the person responsible therefor is bound to give warning of its existence and otherwise guard against a possible injury. Nor is it any excuse that one who has created a peril did not intend or expect an injury to result therefrom; every person is held to a knowledge of the natural consequence of his acts. . . . Said Mr. Justice Holmes, while a judge of the Massachusetts court: 'Knowledge of the dangerous character of a thing is only the equivalent of foresight of the way in which it will act. We admit that if the thing is generally supposed to be universally harmless, and only a specialist would foresee that in a given case it would do damage, a person who did not foresee it and who had no warning would not be held liable for the harm. If men were held answerable for everything they did which was dangerous in fact, they would be held for all their acts from which harm in fact ensued. The use of the thing must be dangerous according to common experience, at least to the extent that there is a manifest and appreciable chance of harm from what is done, in view either of the actor's knowledge or or his conscious ignorance.'" (*Commonwealth* v. *Pierce,* 138 Mass. 165 [52 Am. Rep. 264].)

Allowing the use of the dilapidated truck by four boys without any instruction as to its operation or warning as to the best way to avoid its dangers is sufficient evidence of the negligence of Austin to support the judgment against him.

It is not questioned by counsel that in this case the liability of the District, if any, arises under its governmental, as distinguished from its proprietary capacity. The

three statutes permitting suits in such cases are discussed in *Bates* v. *Escondido Union High School District of San Diego County,* 133 Cal. App. 725 [24 Pac. (2d) 884], where it is said: "In considering the question here presented we should keep before us three acts of the legislature, each of which waive the immunity of a public agency against suit for damages when such agency is acting in its governmental capacity and is exercising a governmental function. These acts are the act approved June 13, 1923 (Stats. 1923, p. 675), which we will call the Public Liability Act, section 1714½ of the Civil Code, and section 2.801, article IV, part II, of the School Code. A right of action against a public agency, or its officers, performing a governmental function, only arises in those instances where it is authorized by law. (*Pittam* v. *City of Riverside,* 128 Cal. App. 57 [16 Pac. (2d) 768].)

"The Public Liability Act gives such a right of action: (1) (Sec. 2) Against the public agency for damages to person or property 'resulting from the dangerous or defective condition of public . . . property'. . . .

"Section 1714½ of the Civil Code provides a liability on the part of a school district owning a motor vehicle for damages by reason of death or injury to person or property resulting from the negligent operation of such motor vehicle by its officer, agent, or employee when acting within the scope of his office, agency or employment. This section would seem to restrict actions brought under it to those cases where the injury was caused by a motor vehicle *owned* by the defendant district and negligently operated by an officer, agent or employee of the district owning the vehicle and acting within the scope of his office, agency or employment. The phrase 'operation of any said motor vehicle' in this section is used 'in its popular and ordinary sense as applied to motor vehicles'. (*Chilcote* v. *San Bernardino County,* 218 Cal. 444 [23 Pac. (2d) 748].)"

Section 2.801 of the School Code in force at the time of the accident created a liability on the part of a school district "for any judgment against the district on account of injury to any pupil arising because of the negligence of the district, or its officers or employees". This has been held to create a liability on the part of a school district for the negligence of its employees. (*Ahern* v.

*Livermore Union High School Dist.*, 208 Cal. 770 [284 Pac. 1105]; *Damgaard* v. *Oakland High School Dist.*, 212 Cal. 316 [298 Pac. 983]; *Maede* v. *Oakland High School Dist.*, 212 Cal. 419 [298 Pac. 987]; *Henry* v. *Garden Grove Union High School Dist.*, 119 Cal. App. 638 [7 Pac. (2d) 192].) Austin was an employee, not an officer of the District. (*Leymel* v. *Johnson*, 105 Cal. App. 694 [288 Pac. 858].) We can see no reason why we should not apply the familiar rule, that to fasten responsibility upon an employer for the negligent acts of the employee, the latter must be acting within the scope of his employment and on the master's business. (*Hanchett* v. *Wiseley,* 107 Cal. App. 230 [290 Pac. 311].)

The District had no connection with the Boy Scouts of America, Troop No. 47, or the scout barracks. The truck was not used for any school purpose or activity when it was taken on the two trips to collect rock and sand with which to construct the fireplace at the scout barracks. The evidence fails to disclose that any responsible officer of the District had any knowledge that the truck had ever been or was being used for any activity not connected with the school. Austin did not have any express or implied authority to permit the use of the truck for the benefit of an organization not connected with the school, assuming, but not holding, that authority could be given to use public property for private purposes. We have concluded that as far as the record shows, Austin acted entirely beyond the scope of his employment and upon business of his own in permitting the use of the truck for the benefit of an activity in no way connected with the District.

The terms of the Public Liability Act are very broad in providing for the liability of a public agency for injury resulting from the defective or dangerous condition of its public property, but there is the limitation that it must have had sufficient notice of such dangerous condition. In this case the board of trustees must be held to have had notice of the condition of the truck, which condition had not been changed in many months. (*Boyce* v. *San Diego Union High School Dist.*, 215 Cal. 293 [10 Pac. (2d) 62]; *Hook* v. *City of Sacramento*, 118 Cal. App. 547 [5 Pac. (2d) 643].) From the point of view of the District, under the evidence before us, Austin and the four boys were in the

position of trespassers in their unauthorized use of the truck. Austin was responsible for its use. It is our conclusion that under the terms of the Public Liability Act, a public agency should only be held liable for damages resulting from the defective condition of its property in its ordinary, usual and customary use, and not from the unauthorized and unusual use shown in the instant case. (*Beeson* v. *City of Los Angeles,* 115 Cal. App. 122 [300 Pac. 993].)

█ Respondents seek to escape the effect of these conclusions by urging that the District and its teachers must exercise a general supervision over children going to and returning from schools, and that the trip for the sand and rock was a continuous undertaking from the time the boys left the school grounds to the time of the accident. This is answered by the fact that Donald Woodman returned to his home and secured his mother's consent to go for the materials. His participation in the undertaking would have ended had Mrs. Woodman withheld her permission for him to continue the journey. Under this theory his return to his home ended the responsibility of the District.

█ Appellants urge that the trial court misdirected the jury when it gave an instruction that teachers must exercise a general inspection over the conduct of pupils going to and returning from school. While this instruction should not have been given as it was not applicable to the facts of the case, we cannot regard it as reversible error. (*Ward* v. *Read,* 219 Cal. 65 [25 Pac. (2d) 821]; *Ying* v. *Pickwick Stages System,* 117 Cal. App. 312 [3 Pac. (2d) 597].)

Included in the notice of appeal from the judgment is a notice of appeal "from the verdict of the jury". The attempted appeal from the verdict is dismissed.

The judgment against W. J. Austin is affirmed.

The judgment against Hemet Union High School District of Riverside County is reversed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 21, 1934, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 2, 1934.