[Civ. No. 7059. Third Dist. Sept. 29, 1944.]

RAY W. HATHAWAY, Appellant, v. SISKIYOU UNION HIGH SCHOOL DISTRICT et al., Defendants; HARVEY FERRIS, Respondent.

Sam J. Anderson and Daniel S. Carlton for Appellant.

Tebbe & Correia and Floyd Merrill for Respondent.

ADAMS, P. J.—This action was brought by plaintiff for damages for the death of his minor son, alleged to have been

caused by the negligence of Betty Lou Riley in the operation of an automobile.

A demurrer to plaintiff's original complaint having been sustained, he alleged in count one of an amended complaint that defendant Ferris was, at all times and in the matters alleged in the complaint, "acting within the course and scope of his agency and authority as agent of the school district and principal of the Weed High School"; that on April 24, 1942, defendant Riley, "in the course and scope of her agency, as hereinafter set forth in paragraph VII, did so negligently drive a certain automobile" as to strike and run over plaintiff's minor son, and that as a proximate result of said negligence the boy received injuries from which he died. Paragraph VII alleged that the defendant Betty Lou Riley was the agent of the other defendants above named; that one of the authorized courses of study in the Weed High School was that of music; that it was desired by the agents and employees of said defendant, Siskiyou Union High School, in charge of said course in music, to provide a portion of the students in such music class with a distinctive uniform to be used in connection with the conduct of such music class; that it was determined by said agents and employees to provide the funds for such purpose by the production of an entertainment by the said Weed High School; that in order to advertise said entertainment the defendant Betty Lou Riley was selected by Harvey Ferris to distribute advertising material thereof in the town of McCloud, during the school hours and at a time when she was in attendance at said Weed High School; that said Betty Lou Riley was a regular student in the Weed High School and subject to the direction, control and supervision of said defendant Harvey Ferris; that the other defendants authorized the selection of said Betty Lou Riley for the purpose aforesaid and authorized the payment by the said Siskiyou Union High School District of the necessary gasoline required for the automobile used in connection with the distribution of such advertising material by said Betty Lou Riley.

In count two plaintiff alleged all of the matters set forth in count one except that, in lieu of paragraph VII of the first count, he alleged that Harvey Ferris was the principal of the Weed High School and an agent and employee of the Siskiyou Union High School District; that Betty Lou Riley was a stu-

dent of the Weed High School and subject to the authority, control and supervision of said defendant, Harvey Ferris; that one of the authorized courses of study conducted in the said Weed High School was that of music; that it was determined by said defendant, Harvey Ferris, as principal of said Weed High School, to provide distinctive uniforms to a portion of the students in said music classes to be used in connection with such course of study; that said Harvey Ferris authorized the production of an entertainment by said Weed High School to raise funds to purchase such uniforms; that on or about the 24th day of April, 1942, said Harvey Ferris, "acting within the course and scope of his authority as an employee and agent of the defendant school district as principal of the Weed High School," negligently, carelessly and recklessly selected and appointed and directed the defendants Betty Lou Riley, Irene Mary Freitas and Margaret Zibull to drive a certain automobile to the towns of McCloud, Dunsmuir and Mt. Shasta to distribute advertisements concerning said entertainment; that said defendant Harvey Ferris knew that said defendants Betty Lou Riley, Irene Mary Freitas and Margaret Zibull were minors of the age of sixteen years, inexperienced and incompetent to drive said automobile on said trip; that said minors were students in said Weed High School under the control, supervision and direction of said defendant Harvey Ferris; that in making said selection, as aforesaid, the defendant Harvey Ferris "was acting in the course and scope of his authority with the defendant school district in the supervision and conduct of course of study of music and of said minor pupils"; that as a direct and proximate result of said negligence of said defendant Harvey Ferris in selecting the aforesaid minors to drive said automobile, which automobile was negligently driven and operated as aforesaid, plaintiff was caused to suffer damages as previously alleged.

Demurrers to the amended complaint were sustained without leave to amend as to defendants school district and its officers, the grounds set forth in a written opinion filed by the trial court being that Betty Lou Riley was not an agent, officer or employee of the school district and was not acting within the scope of any employment by the district or its officers, nor employed in a district activity at the time the accident occurred; also that the scope of the employment of the principal, Ferris, did not include sending out children

throughout the county to distribute advertising material for a school entertainment to which admission was to be charged, although the purpose thereof was to donate the funds, if any, to the purchase of band uniforms. From judgment of dismissal of these defendants no appeal was taken.

The demurrer of defendant Ferris was overruled and he answered, denying the allegations of the complaint above set forth except the allegation that he was principal of the school and Betty Lou Riley was a pupil therein. Trial of the action was begun before a jury, and at the conclusion of plaintiff's case the court granted a motion for a nonsuit, and entered judgment for defendant. Plaintiff has appealed, contending before this court (1) that there was evidence before the trial court sufficient to show that at the time of the accident the Riley girl was the agent of defendant Ferris, and that Ferris was negligent in *selecting* the three girls to make the trip, and (2) that regardless of whether an agency existed between the girl and Ferris, the latter is liable under section 352 of the Vehicle Code for imputed negligence by *permitting* the minor girl to operate an automobile on the highways.

Appellant apparently accedes to the ruling of the trial court that the district and its trustees were not liable because the matters alleged were outside the scope of Ferris' employment as principal of the school, as he first asserts in his brief that "defendant by authorizing these girls to act on behalf of the school exceeded the scope of his authority as principal," and "thereby became principal and Betty Lou Riley his agent," citing section 2350 of the Civil Code, and *Woodman* v. *Hemet Union High School Dist.*, 136 Cal.App. 544 [29 P.2d 257]. Thus he apparently abandons the allegations of his complaint that defendant Ferris was "at all times acting within the course and scope of his authority as an employee and agent of the defendant school district as principal of said Weed High School," and now rests his case upon the proposition that Miss Riley was, at the time of the accident, the special agent of Ferris in his private or individual capacity, and that she was engaged in carrying on business personal to defendant.

Evidence relied upon by appellant to sustain this contention is the testimony of three witnesses, Mrs. Irene Silveria, formerly Irene Freitas, one of the girls who accompanied Miss Riley, the defendant Ferris, and a state traffic officer.

Defendant Ferris, whose deposition was taken prior to the trial, testified that the three girls, Betty Lou Riley, Marjorie

Zibull and Irene Freitas were students at the Weed High School, that a carnival was to be held in the Weed Hippodrome, put on *not* by the school but by a lodge and the civic organizations of the community for the purpose of providing uniforms for the high school band; that he saw the girls about 11 o'clock in the morning of the day of the accident, at which time they asked for permission to be absent from school that afternoon and permission to make up their work; that he asked why and they told him of the proposed trip, saying that they wanted to take advertising material, consisting of posters, printed by the Weed Press, to these other towns and schools; that he had had no previous conversation with them concerning such trip; that they said something about an automobile and that he knew that the Riley girl's boy friend had a car; that he gave them permission to be absent from school and that he gave them a letter addressed to the principals of the schools at McCloud, Dunsmuir and Mt. Shasta; that the reason for giving the letter was because there was an arrangement among those schools that when a student from one school appeared upon the campus of another, the principal of the latter should call the other school; that he did not know what kind of a car the girls took and did not know which one was to drive the car; that all three families had cars; that he asked all three of them together if they had a driver's license and somebody answered yes; that when the girls left to go on the trip he gave them a voucher for gasoline, drawn on the funds of the student body of which funds he had control as principal of the school; that he did not think he had ever ridden with any one of the girls when she was driving, as he seldom rode with students on school trips, but took his own car when he went; that he did not recall discussing with anyone the driving ability of Betty Lou Riley; that he thought something was said about her driving her parents' car practically every night—that he had seen her around; that it was customary for students of the school to go out on trips in their own cars, as there was no school bus and all their transportation had to be made by private cars; that the school usually made its trips on afternoons and Saturdays and had teachers go along; that he usually went himself.

The letter given the girls was addressed to the principals of the three high schools and read: "Will you please permit Miss Betty Lou Riley, Miss Irene Freitas and Miss Margie Zibull

to advertise our band carnival in your school this afternoon?''

Mrs. Silveria testified that she went on the trip, that the three girls took turns driving, that they all knew how to drive and all had driver's licenses; that the purpose of the trip was to advertise a carnival which was being given to raise funds to buy uniforms for the high school band; that before the trip the three girls talked to Mr. Ferris about 11:30 o'clock in the morning and asked him if they could take the trip and he said yes; that Mr. Ferris gave them a letter addressed to the principals of the high schools at McCloud, Dunsmuir and Mt. Shasta; that after lunch they left after first stopping at their homes; that she could not remember who first suggested that they take the trip; that it was just brought up among the three girls that morning and no one asked her about it; that she told her parents she was going; that when they got to McCloud school was out but they gave bills to children on the street and were coming home when the accident happened.

The state traffic officer who had interviewed Betty Lou Riley after the accident stated that she had a temporary or beginner's driver's license and told him she had been driving for a year. This witness also stated that he saw the defendant Ferris in May, 1942, at which time Ferris said that ''it was three of the best girls that he could have sent, or something to that effect''; that he wouldn't try to repeat the same words as he might have forgotten; that it was some time ago.

█ As a general rule a plaintiff may not sue upon one theory and recover upon proof of another. █ However, assuming, but not deciding, that under the allegations of plaintiff's pleading it is proper for him to contend on this appeal that defendant is liable in a capacity other than that of principal of the school, we are of the opinion that the evidence relied upon is insufficient to show that the relationship of principal and agent existed between defendant and Miss Riley, or that at the time of the accident she was acting in his behalf or engaged in the transaction of any of his personal business. He did not ''select'' or ''appoint'' or ''direct'' the girls to distribute advertising material for the carnival, or to drive the automobile in which they made the trip. He had no personal interest in, nor any part in, the giving of the carnival, which was not even being given by the school, though the school might benefit indirectly from the profits,

if any, therefrom, to the extent of securing band uniforms; it was not the business of defendant, even as principal of the school, to secure such uniforms; and certainly not his personal business, nor had he assumed to make it such; and, except in his capacity as principal of the school, defendant had no authority or control over the girls. The automobile which the girls drove did not belong to defendant, nor had he any control over same; and the fact that he gave the girls a voucher on the student body funds for gasoline for the trip did not make them his agents or tend to show that they were to act for him in making the trip. The same is true as to the giving of the letter to the principals of the other high schools.

In order to impose upon Ferris liability for the torts of the girls or any of them as his agents or employees, it was necessary to show that he had employed them to act for him on his personal business, and that at the time of the accident they were acting for and in his behalf, and within the scope of their agency or employment. It is said in 2 California Jurisprudence Supplement, page 492, that where it is sought to charge a defendant on the ground that the driver of an offending vehicle was his agent or employee, proof must be made that the driver was the employee of defendant for some purpose, that the driver's use of the vehicle was a contemplated incident of his employment, and that the driver, at the time of the collision, was operating the vehicle in the transaction of the defendant's business. Also see same, pages 495-496, and cases there cited. Furthermore, the law indulges in no presumption that an agency exists, but instead presumes that a person is acting for himself and not as agent for another. (*Walsh* v. *American Trust Co.*, 7 Cal.App.2d 654, 659 [47 P.2d 323].)

The only allegations of the complaint which can be said to find support in plaintiff's testimony are the allegations that Betty Lou Riley was a regular student in the Weed High School and that defendant Ferris was principal thereof and an employee of the High School District; that Betty Lou Riley, Irene Freitas and Margaret Zibull were minors of the age of sixteen years. As to count one there is no evidence to support the allegations "that one of the authorized courses of study in said Weed High School was that of music," or that it was desired by the agents and employees of the High

School in charge of the course in music to provide a portion of said students with uniforms, or "that it was determined by said agents and employees to provide funds for such purpose by the production of an entertainment by the said Weed High School," or that in order to advertise said entertainment Betty Lou Riley was selected by defendant Ferris to distribute advertising material thereof, or that the defendants the district, its trustees and its superintendent, or any of them, authorized the payment by the district of the necessary gasoline required for the automobile used in connection with the distribution of such advertising material by Betty Lou Riley. As to the second count there is no evidence "that it was determined by said defendant, Harvey Ferris, as principal of said Weed High School, to provide distinctive uniforms to a portion of the students" in music classes, to be used in connection with such course of study, or that defendant Ferris "authorized the production of an entertainment by said Weed High School to raise funds to purchase such uniforms," or that Ferris "appointed and directed" the three girls "to drive a certain automobile to the towns of McCloud, Dunsmuir and Mt. Shasta to distribute advertisements concerning said entertainment," or that Ferris knew that the three girls were inexperienced and incompetent to drive said automobile on said trip, or that they were in fact inexperienced or incompetent. On the contrary, the evidence shows that the entertainment was given by a lodge and the civic organizations of the community, that the plan to drive to the above mentioned towns originated with the three girls themselves, and that all three girls had driver's licenses which, under section 254 of the Vehicle Code, may be issued only to persons who have successfully passed the tests prescribed by the Department of Motor Vehicles for operator's licenses. It does not show that Ferris knew that the Riley girl was to drive the automobile, or whose automobile was to be used for the trip. The most that can be said of this evidence is that defendant Ferris, as principal of the school gave the girls permission to be absent from school for the afternoon, and permission to make up their work. It is insufficient to support a conclusion that he intended to or did make any of the girls his agent, or that they or any of them agreed or intended to act as such agent.

Appellant also contends that the case should have gone to the jury because of the statement made by defendant

to the traffic officer that "it was three of the best girls he could have sent, or something to that effect"—that this was an admission on the part of Ferris that he had sent the girls on the trip. This is but a mere scintilla of evidence, and it is said in 9 California Jurisprudence 556-557, that a mere scintilla of evidence will not justify a judge in leaving a case to a jury; that courts are no longer required to submit it unless the evidence is of such a character that it would warrant the finding of a verdict in favor of the party introducing such evidence.

Turning to appellant's final contention, that regardless of whether an agency existed between Miss Riley and Ferris the latter is liable under subdivision (b) of section 352 of the Vehicle Code for imputed negligence for permitting the minor to operate an automobile on the highway, section 352 provides, in subdivision (a), that any liability of a minor arising out of his driving a motor vehicle upon a highway, is imposed upon the person or persons who signed and verified the application of such minor for a license, for all purposes of civil damages, etc. Subdivision (b) reads:

"Any negligence or wilful misconduct of a minor whether licensed or not under this code in driving a motor vehicle upon a highway with the express or implied permission of the parents or the person or guardian having custody of the minor shall be imputed to such parents or such person or guardian for all purposes of civil damages and such parents or such person or guardian shall be jointly and severally liable with such minor for any damages proximately resulting from such negligence or wilful misconduct."

Subdivision (d), however, provides:

"The provisions of this section have no application when the minor is acting as the agent or servant of any person."

Appellant argues that the word "person" as used in subdivision (b) necessarily includes a schoolmaster, because under section 1.20 of the School Code (Ed. Code, § 16051) pupils are required to submit to the authority of the teacher of the schools, and section 5.543 of said code (Ed. Code, § 13229) requires that the teacher hold pupils to strict account for their conduct on the way to and from school, and because a school teacher stands "in loco parentis" to his students while they are in school; that, therefore, subdivision (b) of section 352, *supra,* must be construed as including

school teachers within the meaning of the phrase "person or guardian having custody of the minor."

We agree with the conclusion arrived at by the trial court, that in construing subdivision (b) of section 352 the intent of the Legislature is to be gathered from all of the sections of division 5 of the Vehicle Code, entitled "Civil Liability of Persons Signing License Applications of Minors"; that a consideration of said sections compels the conclusion that "person having custody of the minor" means person having permanent legal custody, and not a person such as a school teacher whose control over his pupils is limited in time and scope. ■ These sections do not provide that a driver's license may be issued to a minor upon an application signed by his school teacher, and the inference from section 350 is that such application *shall* be signed by the father and mother of such minor, if both are living and have custody of such minor, that if only one parent is living, the application shall be signed and verified by such parent, that when neither parent is living or has custody the application is to be signed by a guardian, and only when there is no guardian is such application to be signed by any other person having custody of the minor. The only other person authorized by the statute to sign is an employer, and then only with the written consent of the father and mother, if both are living and have custody of the minor, and otherwise with the consent of the person or guardian having such custody; and even parents, who have given consent to the signing of an application by an employer, under section 351(b) are not liable merely by reason of having given such consent to the civil liability specified in subdivisions (a) and (b) of section 352. If appellant's argument were sound a teacher who *permitted* his pupils to drive their own or parents' automobiles to and from school would be liable for the negligence of such minors, even though their parents had signed their applications for licenses.

■ Furthermore, appellant, in seeking to impose liability upon the high school principal under the foregoing section of the Vehicle Code, is assuming a position entirely at variance with his contention that Miss Riley was the agent of defendant Ferris, for subdivision (d) of section 352, *supra,* provides that the provisions of that section have no application when the minor is acting as the agent or servant of any person. It is also inconsistent to argue that defendant

Ferris is liable in his individual capacity and at the same time to urge that he is liable under section 352 as principal of the school.

Appellant relies upon *Pontius* v. *McLain*, 113 Cal.App. 452 [298 P. 541], where the grandfather of a minor who lived with the child and his mother had signed the application for a driver's license for the minor; but that case is not pertinent, for there, attached to the application for the driver's license, was a certificate signed by the grandfather vouching for the minor and specifically stating that he would be responsible for him while driving an automobile on a public highway in California. The court said that as a general proposition the negligence of a minor in driving an automobile is imputed to the person signing the application; and the court relied upon the fact that the grandfather, having represented himself as a person having sufficient custody of the minor to justify his signing of the application for a license, would not be permitted to claim that the representation was false.

Here, since a driver's license had been issued to Miss Riley, we must presume that her application therefor had been signed by her parents or other persons having her actual custody, which persons thereby assumed the liability imposed by section 352, *supra*. Yet these persons were not made parties to the action, and Miss Riley herself was never served with process. Under these circumstances it is going far afield to attempt to impose liability upon this defendant. The comment of the court in *Guild* v. *Brown*, 115 Cal.App. 374, 381 [1 P.2d 528], appears pertinent where it is said:

"It seems to be taken for granted in these times that the main thing in every case of accident is to find someone able to respond to the claim of damage. And following this out the ancient doctrines of the law have been twisted and distorted in an endeavor to dole out damages to every unfortunate person injured, regardless of the true principles upon which liability rests."

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 28, 1944. Carter, J., voted for a hearing.