[L. A. No. 21508.   In Bank.   May 25, 1951.]

ROBERT BROKAW, a Minor, etc., et al., Respondents, v. BLACK-FOXE MILITARY INSTITUTE et al., Defendants; HOLLYWOOD COMMERCIAL BUILDINGS, INCORPORATED (a Corporation), Appellant.

Tripp & Callaway and Hulen C. Callaway for Appellant.

Robert J. Sullivan and Lewis L. Clarke, Jr., for Respondents.

CARTER, J.—Defendant Hollywood Commercial Buildings, Incorporated, doing business as Black-Foxe Military Institute (hereinafter termed the school), appeals from a judgment on a jury verdict assessing damages against it for personal injuries suffered by a student of the school.

The injuries arose out of a collision which occurred off the school grounds between an automobile driven by one Elvin

Martin, in which the student was riding, and a truck. Two related but separate actions were filed and were consolidated for trial. The first action, brought by the student, Robert Brokaw, a minor, through his guardian *ad litem*, was based on a charge of negligent driving, and named as defendants, the driver of the truck,. the driver of the automobile, the owner of the automobile, and (on a master-servant theory) the school. In the second action, the student (by his guardian *ad litem*) and his mother sued the school on the theory of negligence in allowing the student to leave the school premises, or negligent failure to supervise. A motion for nonsuit was granted in favor of the truck driver, without objection by plaintiffs. The jury made a special finding that Martin, the driver of the automobile in which the student was riding, was acting as agent of the school and in the course and scope of his authority at the time of the accident. A consolidated (single) verdict for $10,000 against the school was rendered in favor of the student and his mother. No verdict was rendered either for or against Martin. As ground for reversal the school (hereinafter sometimes termed defendant) urges that the evidence wholly fails to support a finding that any negligence chargeable to it contributed proximately to the student's injuries. It urges that it was not negligent in permitting Robert to leave the school grounds with Martin, and that if it was, such negligence was not the proximate cause of the accident. That contention need not be discussed as we believe the judgment may be supported on the theory that Robert was injured as the result of Martin's negligence in the operation of the car and that he was acting within the scope of his employment by the school at the time of the accident. In that connection it is asserted that Martin was not negligent and he was not the agent of the school.

It was an established practice of the school to conduct organized outings on Saturdays for the boys, which they were free to attend or not, as they wished. The boys did not pay a special transportation charge for the school's station wagons ordinarily used on the outings, but did have to pay for any amusements or refreshments from their own spending money. Martin was a young college student just under 21 years of age who worked part time at the school; one of his duties was to take the students on certain of the Saturday outings. He also acted as teacher and counselor, and as dormitory and athletic supervisor. On the Saturday of the accident he had been off duty, but shortly before noon had come to the school in

an automobile owned by his father to pick up some belongings. On that day Robert and certain other boys had not gone on the school's regular organized outing to Long Beach because they lacked spending money. When Martin learned of this he offered to lend them spending money, take them to his mother's home in Whittier for lunch, and then take them to Long Beach to join the other boys. They went with Martin to the officer in charge, who was the only person authorized under the school rules to permit them to leave the school grounds, and secured permission to go with Martin by the specified route. The boys did not pay Martin for their transportation and did not discuss the matter. En route to Whittier in the automobile owned by Martin's father the collision took place.

Turning to the school's contention that the evidence does not support the jury finding that Martin was the school's agent at the time of the collision, it appears that Lt. Redmond was in charge at the school when the request was made of him by Martin and the boys that the boys be permitted to go with Martin to his home and then to the place of the regular Saturday outing. Redmond testified that he was the officer in charge on that day; that a young student like Robert is not allowed to leave the grounds unless he is "in the charge of a responsible person"; as to what transpired when the arrangement was made with Martin he said: "I know Mr. Martin said something about it to me and mentioned he was going to his mother's at Whittier and have lunch, and was from there going to Long Beach and would have the children back that evening. I am not too positive, but I am quite sure that I did request him to be back by 8:00 o'clock or before because they were leaving in the morning. I felt a day's outing was sufficient without staying out too late." He knew Martin as a colleague at the school. There had been a regular scheduled trip for the boys that day for an "outing." Although Martin did not take the boys on the instant Saturday outing, it was one of his duties on every other Saturday. The foregoing is sufficient from which the jury could have inferred that Martin was the agent of the school in taking the boys on that occasion. True, it was not a regular scheduled outing, but it was in lieu thereof. When Redmond permitted Martin to take the boys it may be inferred, he being an instructor at the school, that he was authorized as such employee to do so. The school refers to testimony that the trip had no connection with the school activities (probably the

conclusion of the witnesses); that he received no pay for it; that he was not on duty at the time; that he was on a trip of his own; that he was driving his own car, and the like. That creates nothing more than a conflict in the evidence. [2] While it may be that an inference might flow therefrom that Martin was acting merely as a matter of accommodation, that does not require a reversal, as the existence of agency is generally a question of fact, and ''whether he was such agent was an issue sharply contested at the trial, and was to be determined by the court upon a consideration of the entire evidence respecting the course pursued by him during the negotiations, rather than upon any specific testimony by him or by the defendant as to the fact of agency; and the inference which the trial court might reasonably make from such evidence is entitled to the same consideration as its finding of a fact upon contradictory evidence.'' (*Willey* v. *Clements,* 146 Cal. 91 96 [79 P. 850].) (See, also, *Ferroni* v. *Pacific Finance Corp.,* 21 Cal.2d 773 [135 P.2d 569]; 1 Cal.Jur., 696-7, 865.) *Hathaway* v. *Siskiyou etc. School Dist.,* 66 Cal.App.2d 103 [151 P.2d 861], cited by the school is clearly distinguishable. There the issue was whether a school pupil was the agent of the school, when by permission of the school principal; she was absent from school to advertise a nonschool carnival. Here Martin was an employee of the school and it was in general line of duty to take boys on outings and he was authorized to take them on the fateful trip.

There is substantial evidence of Martin's negligence in driving the car, and that such negligence was a proximate cause of the accident. Cruz A. Uribe was driving a truck upgrade east on Fourth Street, in Los Angeles, at 20 miles per hour. The engine was missing and he pulled next to the curb in the extreme right lane and drove half the length of his truck off of Fourth Street through an opening in the curb and stopped. Martin was also driving east on Fourth Street in the same traffic lane to the rear of the truck. According to Martin, he was travelling 25 to 30 miles per hour, and the truck was going slower and stopped when Martin's car was several car lengths behind it. Martin's car ran into the truck. He admitted that he was going too fast to stop. While he was approaching the truck he was explaining and pointing out to the boys a bridge which was there being constructed and telling them to look at it. There is evidence that Martin's car did not slow down prior to the impact. The jury could have

concluded that Martin was not keeping a proper lookout ahead or was travelling too closely behind the truck.

██ It is claimed that the jury exonerated Martin, and therefore, the verdict against the school cannot stand, as its liability must rest upon the doctrine of *respondeat superior.* (See *Bradley* v. *Rosenthal,* 154 Cal. 420 [97 P. 875, 129 Am.St. Rep. 171] ; *Fimple* v. *Southern Pac. Co.,* 38 Cal.App. 727 [177 P. 871].) It does not appear, however, that there was a verdict for Martin. The jury's verdict was for Robert and his mother and against the school. That is tantamount to no verdict with respect to Martin. ██ It may occur, as it did here, that in an action against several defendants, including a master and his servant, the jury may return a verdict against the master and remain silent as to the servant. In such a case the failure to find as to the servant is not an exoneration of him, thus relieving the master of liability where the cause of action is based upon the doctrine of *respondeat superior.* It is merely an incomplete verdict in that it fails to dispose of the liability of all of the parties defendant. ██ In this connection, it is said in *Irelan-Yuba etc. Min. Co.* v. *Pacific G. & E.,* 18 Cal.2d 557, 570 [116 P.2d 611] : "It is well settled that a verdict against one of two defendants but which is silent as to the other defendant is not a verdict in favor of the latter but is merely a failure on the part of the jury to find upon all of the issues." That has been held to be the rule in many cases. (*Fennessey* v. *Pacific Gas & Elec. Co.,* 10 Cal.2d 538 [76 P.2d 104] ; *Benson* v. *Southern Pac. Co.,* 177 Cal. 777 [171 P. 948] ; *Rankin* v. *Central Pacific R. R. Co.,* 73 Cal. 93 [15 P. 57] ; *Benjamin* v. *Stewart,* 61 Cal. 605 ; *Lloyd* v. *Boulevard Express,* 79 Cal.App. 406 [249 P. 837] ; *Keller* v. *Smith,* 130 Cal.App. 128 [19 P.2d 541] ; *Broome* v. *Kern Valley Packing Co.,* 6 Cal.App.2d 256 [44 P.2d 430].)

It is suggested, however, that the above rule is subject to the qualifications that the verdict must be construed with reference to the pleadings, evidence and instructions to the jury, and that as the first action, based on the theory of *respondeat superior* and the negligence of Martin, the servant, had only Robert as the plaintiff, and the second, based on the theory of negligence in supervision, had as plaintiffs both Robert and his mother, the jury, in finding for both the student and his mother, must have based its verdict on the latter theory. The rule is, however, that the silence as to one defendant stands as no verdict as to him unless the instructions to the jury show a contrary meaning. It has been held

that the pleadings and evidence must also be examined.   (See *Fennessey* v. *Pacific Gas & Elec. Co., supra*; *Irelan-Yuba etc. Min. Co.* v. *Pacific G. & E., supra*.)   ▮   But here the instructions and forms of verdict given to the jury are not in the record.   We must presume, therefore, that they were proper, and under the issues so presented, a proper verdict was returned (*Snodgrass* v. *Hand,* 220 Cal. 446 [31 P.2d 198].)   ▮   It must be observed in this connection, and also in connection with the form of verdict in favor of Robert and his mother, that in the first action, the one based on *respondeat superior* and the negligence of Martin, while the mother was not named formally as a party, she appeared formally therein as the guardian *ad litem* of Robert, and she alleged therein, that as such guardian, she incurred hospital and medical expenses, and in the prayer, such expenses are claimed.   The same was done in the second action, based on lack of supervision by the school, except she appears formally as plaintiff.   In either case, she, for herself, was not entitled to recover any more than those expenses.   The only reasonable conclusion is, therefore, that the jury, in returning a verdict in favor of both her and her son, included her merely because of such medical expenses. We cannot presume error in the verdict by speculating that both were included in the verdict because both were formally named in the second action and that it was predicated upon the theory of that action.   We cannot suppose that the jury indulged in any such finespun legal theories or even knew that the mother was a formal party in one action and not the other.   On the contrary, not having the instructions or forms of verdict before us, we must assume that she was treated by them as a plaintiff in both actions, and that the jury was told that she was entitled to hospital expenses incurred on behalf of Robert, if Martin was negligent in driving the car, and that such a verdict was proper.   ▮   Insofar as the verdict might be questioned for failing to segregate the amount awarded to the mother for medical expenses from that awarded to Robert for personal injuries, it does not appear that any objection was made to the form of verdict; it was, therefore, waived.   (*Brown* v. *Regan,* 10 Cal.2d 519 [75 P.2d 1063].)

▮   Moreover, throughout the trial the mother was treated as a plaintiff without regard to which action was involved. The actions were tried as one action.   Defendants' counsel in his motion for a nonsuit referred to the two actions as one in which two causes of action were stated, one on each theory

—*respondeat superior* and negligence in supervision. Certainly that is tantamount to treating the mother as a plaintiff under both theories or actions. Furthermore, a motion for a new trial was made on the same ground (impropriety of the verdict) and was denied. The trial court's conclusion, knowing the jury instructions and the trial proceedings, must be given great weight. (See *Snodgrass* v. *Hand*, 220 Cal. 446 [31 P.2d 198].)

The judgment is affirmed.

Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J.—I dissent. It appears to me that on the record in this case the verdict cannot be sustained upon any theory of liability, and that the judgment should be reversed.

As related in the opinion prepared by Mr. Justice Carter, two actions were filed. In the first action (No. 528375) the student as the sole party plaintiff sued the school *and* Martin (the driver of the automobile in which the student was riding when injured). In the second action (No. 540614) the student *and* his mother, as parties plaintiff, sued the *school only* (on the theory of negligence or breach of contract in letting the student leave the school premises). The jury returned a verdict in favor of the student *and* his mother against the school *only*. This verdict fits precisely the pleadings of the second action; as to the parties plaintiff and as to the party defendant in that action it resolves all the issues. It does not fit and does not appear to be responsive to the pleadings, parties or issues of the first action. It seems to me that the only reasonable conclusion is that the verdict is based solely on the theory of the second action (No. 540614).

I think that on close analysis even the argument in Justice Carter's opinion tends to support the above stated view rather than the conclusion reached by him. He says (after mentioning the cases holding that the pleadings and evidence must be examined, as well as the instructions to the jury, in determining the significance of a verdict as to one defendant and its silence as to another): "But here the instructions and forms of verdict given to the jury are not in the record. We must presume, therefore, that they were proper, and under the issues so presented, a proper verdict was returned. (*Snodgrass* v. *Hand*, 220 Cal. 446 [31 P.2d 198].)" Applying that quoted principle to the case here we should presume that

"under the issues so presented, a proper verdict was returned." The verdict which the jury returned is legally "proper" in respect to the parties and the issues of the second action; it is in favor of the two plaintiffs named in that action and against the sole defendant. It is my firm conviction that the evidence (which it would serve no useful purpose to elaborate here) is not sufficient to support a verdict in that action; it wholly fails to establish the breach of any duty owed by defendants.

Moreover, the superior court clerk's file in these cases has been forwarded to this court. Further supporting the view I have just expressed is the fact that the following instruction was given:

"If you find from the evidence that all of the defendants in this action were guilty of negligence which proximately cause the injuries received by the plaintiff Robert Brokaw then your verdict must be for the plaintiffs against all of said defendants."

If we are to presume that the jury followed the instruction —and we certainly have no right to presume otherwise—it seems to me that we must conclude that the jury did not find Martin guilty of negligence and could not have found Black-Foxe guilty of negligence on the theory of *respondeat superior* because of any act or omission of Martin's.

Even if this court could assume that by consolidating the actions for trial it was intended to so amend the pleadings as to include the mother as a party plaintiff in the first action (No. 528375), and that the failure to find against Martin has no significance, the most that can be said in favor of plaintiffs-respondents is that it is impossible to tell, then, upon which theory the verdict is based; and since the evidence is insufficient to support a verdict based upon the theory advanced in the second action (No. 540614), the judgment cannot be sustained. I would therefore reverse it.